IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEODORE BAILEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HARLEYSVILLE NATIONAL | : | No.    04-1541 |
| BANK & TRUST. CO., | : | |
| J.R. CALDWELL and EMPLOYEES | : | |
| | : | |

MEMORANDUM

Baylson, J.                                                                                          August 22, 2005

I.   **Introduction**

This case presents the question whether Harleysville National Bank's ("the Bank") refusal to cash a check for Plaintiff Theodore Bailey ("Mr. Bailey"), an African American male, involves racial prejudice in violation of 42 U.S.C. §1983, 42 U.S.C. §1981, and the First, Fifth, and Fourteenth Amendments of the United States Constitution.  Presently before the Court is Defendants' Motion for Summary Judgment.

The Court heard oral argument on August 19, 2005.  Mr. Bailey appeared *pro se.*

II.   **Factual and Procedural Background**

Mr. Bailey filed his *pro se* complaint against the Bank on April 8, 2004, alleging "discrimination and prejudice" in the Bank's refusal, on March 26, 2004, to cash a check he had received from Bank customer First American Title Insurance Company ("First American"), written on a Bank check.  The Court has jurisdiction under 28 U.S.C. §1331.

The facts below are as set forth by Mr. Bailey.  On March 26, 2004, Mr. Bailey presented a check for $1,400 to a teller at the Bank branch at 1017 North Bethlehem Pike, Spring House,

PA, seeking to cash it. Mr. Bailey was not a customer of the Bank.[1] The teller told Mr. Bailey that cashing his check required a manager's approval. Two more senior Bank employees with whom Mr. Bailey spoke told him the Bank would not cash his or other non-customer checks of over $1,000.

The last of these employees, Bank vice president and branch manager Jim R. Caldwell, gave Mr. Bailey a copy of the Bank's check cashing policy which stated that the Bank will only cash checks of non-customers who provide an acceptable form of identification and a fingerprint. This policy was also posted in the branch's main service area. Mr. Bailey informed Mr. Caldwell that he was willing and able to provide a fingerprint and identification acceptable under the policy. Mr. Caldwell again denied Mr. Bailey's request, and hand-wrote the following on the bottom of the copy of the check cashing policy he had handed Mr. Bailey: "Items over $1,000 require an endorsement guaranty from their own bank." Mr. Bailey has attached this document with Mr. Caldwell's handwritten note as Exhibit Z to his response to defendants' motion.

With its Motion for Summary Judgment, the Bank attached as Exhibit D a copy of a check cashing policy with text different from that in the policy given to Mr. Bailey on March 26, 2004. The policy proffered by the Bank includes a starred and offset line stating, "Signature Guarantee May Be Required." The Bank indicated in its Motion that the policy in its Exhibit D was the policy given to Mr. Bailey on March 26, 2004.

In his response to Defendant's Motion for Summary Judgment, Mr. Bailey points out that the Bank's proffered policy is different from the one he received from Mr. Caldwell during his

---

[1] In the terms of the Bank's check cashing policy, "customers" apparently denotes account holders.

visit to the Bank. In its June 16, 2005 Reply, the Bank conceded that the policy it had entered as Exhibit D differed from that given Mr. Bailey, and that the policy entered as Mr. Bailey's Exhibit Z was in fact the policy Bailey received from Mr. Caldwell on March 26, 2004. However, at the deposition of Mr. Caldwell by Mr. Bailey, a third check cashing policy, captioned "Harleysville National Corporation Check Cashing Procedures," which Mr. Caldwell described as the authoritative check cashing procedure for the Bank, was given to Mr. Bailey by the Bank and entered as Bailey Exhibit 1. This policy supports Mr. Caldwell's assertion of the Bank's guarantee requirement for cashing non-customer checks of over $1,000.

According to the Bank, in Defendant's Answers to Interrogatories of Plaintiff, Mr. Bailey left the branch after his interaction with Mr. Caldwell, but re-entered twice subsequently, each time demanding that his check be cashed. Upon Mr. Bailey's second return, Bank employee Robert Kreamer requested the police be called.

According to Mr. Bailey's pretrial memo, Lower Gwynedd Township Police stopped Mr. Bailey as he drove home from the Bank. Mr. Bailey asserts that Lower Gwynedd police officer Timothy Evard told him he was stopped "because of the Bank."

## III. The Parties' Contentions

### A. Plaintiff's Contentions

In his response to Defendant Bank's Motion for Summary Judgment, Mr. Bailey reasserts that the primary basis of his claim is 42 U.S.C. § 1983, and that he also sues under the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1981. Finally, Mr. Bailey contends that the Bank has acted toward him with "deceit" during the litigation. He alleges Bank intransigence at a settlement meeting before Magistrate Judge Strawbridge and

improper responses to Mr. Bailey's interrogatories and document production requests.

At oral argument, Mr. Bailey indicated that he believed that his claim under § 1983 was proper because the Bank was insured by the Federal Insurance Deposit Corporation. He did not make any contention that the individual Defendant, Mr. Caldwell, or other employees were public employees or that they acted under color of law. As to his 1981 claim, Mr. Bailey agreed that he did not have any evidence that the actions about which he complained were taken against him because he was African American. Mr. Bailey then went into a long discourse about how poor people were taken advantage of by large corporations. At one point, he disclaimed any reliance on the fact that he was African American. However, he did point out that the Bank called the police to stop him and interrogate him, which he felt was unusual.

   **B.** **Defendant's Contentions**

The Bank bases its Motion for Summary Judgment on the premise that Mr. Bailey's complaint arises under 42 U.S.C. §1981, not §1983, because the Bank reads Mr. Bailey's claim as irreconcilable with the requirements of 42 U.S.C. §1983. The Motion for Summary Judgment therefore addresses why the Bank should prevail under 42 U.S.C. §1981. The Bank argues that Mr. Bailey fails to state a claim satisfying 42 U.S.C. §1981 because: (1) no contractual privity existed between the parties, and (2) Mr. Bailey cannot demonstrate that the Bank denied him check cashing service with discriminatory intent.

Defendants argue that 42 U.S.C. § 1981 governs the making and enforcement of contracts, and that since Mr. Bailey did not have an account with the Bank, no contractual relationship existed between the parties under Pennsylvania law. Rather, Mr. Bailey must seek recourse, if at all, with the drawee of the check, First American.

The Bank further argues that Bailey fails to show the discriminatory intent element required to prevail under 42 U.S.C. § 1981. The Bank contends that Mr. Bailey cannot demonstrate disparate impact, departures from procedural norms, a history of discriminatory acts or other relevant facts that would satisfy the discriminatory intent element, but instead makes allegations of generalized racial bias which do not suffice to make out a claim under 42 U.S.C. § 1981.

## IV.   Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. In determining whether to grant summary judgment, the Court must "view[] the facts from evidence submitted in the light most favorable to the non-moving party, and tak[e] the non-movant's allegations as true." Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).

## V.   Discussion

### A.   Mr. Bailey's claim under 42 U.S.C. §1983

Mr. Bailey relies on 42 U.S.C. § 1983[2] as the primary legal basis for his claim,

---

[2] 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or

while the Bank, without discussion, maintains that 42 U.S.C. § 1983 is inapplicable to the facts in this case.

"A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under the color of state or territorial law." Id. As a threshold inquiry, liability can only attach under §1983 to persons acting under color of state law. Versarge v. Township of Clinton, N.J., 984 F.2d 1359, 1363 (3d Cir. 1993). In the Third Circuit, "conduct satisfying the state action requirement under the Fourteenth Amendment will satisfy the § 1983 requirement as well." Groman, 47 F.3d at 639 (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 n. 18 (1982)).

The Supreme Court has elaborated different tests for establishing when private individuals are acting under color of state law, each entailing a fact-specific inquiry. Groman, 47 F.3d at 638. Uniformly these tests deem action by a private individual to occur under color of law when the power exercised in the action derives from so close a connection to the State that it "can be fairly attributed to the State itself." Id.; Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974). Under the exclusive government function test, a private actor may be converted to a public actor, and act under color of state law, only by undertaking an activity that has been "traditionally the exclusive prerogative of the State." Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982). The close nexus test finds state action where "a sufficiently close nexus between the state and the challenged action of the regulated entity [permits] the action of the latter [to be]

---

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

fairly treated as that of the State itself." Bodor v. Horsham Clinic, Inc., 1995 WL 424906, *4 (E.D.Pa. 1995)(quoting Jackson, 419 U.S. at 351). The state compulsion test identifies state action in private action coerced by the State. Bodor, *5; Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Finally, under the symbiotic relationship test, private actors may be treated as state actors where they operate in significant interdependence with the State. Groman, 47 F.3d at 641 citing Blum, 457 U.S. at 1004.

The Third Circuit rejected the proposition that private banks *per se* are state actors in Rogers v. Bucks County Domestic Relations Section, 773 F.Supp. 768, 775 (E.D. Pa. 1991), aff'd, 959 F.2d 1268, 1271, n.4 (3d Cir. 1992), where the court concluded *sua sponte* that a bank was not a state actor and dismissed a claim against the bank brought under 42 U.S.C. §1983. In other Circuits similar questions have been raised and answered in the negative. See e.g. Andrews v. Federal Home Loan Bank of Atlanta, 998 F.2d 214 (4th Cir. 1993)(federal home loan bank, though organized under federal charter and regulated by the federal government, is not state actor for purposes of First Amendment suit where bank is privately funded and owned, pays dividends to shareholders, and offers private institutional banking services); United States v. Garlock, 19 F.3d 441 (8th Cir. 1994)(neither private bank nor its security employees who work in conjunction with State law enforcement agencies are state actors for the purposes of a suit under the Fourth and Fifth Amendments, though the bank operates under heavy federal government regulation); Morast v. Lance, 807 F.2d 926 (11th Cir. 1987)(in a suit under 42 U.S.C. §1985, heavy regulation by the federal government does not convert a national bank or its officers into "instrumentalities" or agents of the State).

In the instant case, Mr. Bailey makes no allegation that the Bank is a state actor in support

of his 42 U.S.C. § 1983 claim. As in Rogers, this implicit, unsupported assertion of state action is insufficient to sustain such a claim. 773 F.Supp. at 775. Indeed the case law cited above indicates that a high degree of connection, exceeding the basic regulatory and insurance relationships between private banks and the state, must exist to convert a private bank into a state actor for the purposes of a federal civil rights claim. Mr. Bailey's claim does not satisfy this standard, and his suit under 42 U.S.C. § 1983 must therefore be dismissed.

      **B.**      **Mr. Bailey's claim under 42 U.S.C. §1981**

As an additional basis for his suit, Mr. Bailey relies on 42 U.S.C. § 1981. Section 1981 provides:

> (a) Statement of equal rights
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

For claims brought under §1981, the burden-shifting analysis for summary judgment in Title VII cases applies. See, e.g., McDonnell Corp. v. Green, 411 U.S. 792 (1973); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). In the first step of the inquiry, the plaintiff must establish the three prima facie elements of a Section 1981 claim: "(1) the plaintiff is a member of

a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in [section 1981]." Lewis v. J.C. Penney Co., 948 F.Supp 367, 371 (D. De. 1996)(quoting Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1087 (2d. Cir. 1993)).  If the plaintiff makes out a prima facie claim, the defendant may assert reasons for its action that would not violate section 1981.  Id. Plaintiff may then challenge any such reasons as pretextual.  Id.

Bailey, as an African-American citizen, satisfies the first element of a prima facie claim under section 1981.

To satisfy the second prima facie element, Mr. Bailey must allege facts which would establish that the Bank's refusal to cash his check was an act of intentional racial discrimination, or would support an inference to that effect.  Ackaa v. Tommy Hilfiger Co., 1998 WL 136522 *3 (E.D. Pa. 1998).  The discriminatory intent necessary for a valid section 1981 claim can manifest in disparate impact, departure from procedural norms, a history of discriminatory conduct, or other relevant facts, but may not be established by conclusory allegations of generalized racial bias.  Flagg v. Control Data, 806 F.Supp. 1218, 1223 (E.D.Pa. 1992).

In Ackaa, African-American plaintiffs satisfied the second element of §1981 by alleging that security guards in a retail store followed them closely as they shopped, that the guards in question had a history of using racial epithets, and that the store had received numerous complaints from black customers in the past regarding racially offensive behavior by the same security guards.  Id.  Further, the defendants did not deny that they had closely scrutinized plaintiffs, the only black customers in the store, as they shopped.  Id.

In Ackerman v. Food-4-Less, an African-American plaintiff who had been detained by

store security on suspicion of shoplifting alleged sufficient facts to allow the court to conclude that the defendant store's actions toward her were based on her race. 1998 WL 316084 *2 (E.D. Pa. 1998). Specifically, the plaintiff satisfied the second prima facie element of her section 1981 claim by alleging that the store security guard who detained her used various racial slurs toward her.

Though he emphasizes race in his complaint, Mr. Bailey alleges no facts to indicate racial discrimination on the part of the Bank in denying him check cashing services. Unlike plaintiffs in Ackaa and Ackerman, Mr. Bailey makes no allegation of racial slurs being directed at him by Bank employees, or of any other behavior by Bank employees that could be interpreted as evincing an intent to discriminate against him on the basis of his race. In his deposition, Mr. Bailey explicitly declined to allege that the Bank treated him differently than it had treated similarly situated white people in the past. (Bailey deposition, p. 60; Exhibit G to Defendants' Motion). He made a similar statement at oral argument. The fact of Mr. Bailey's race alone cannot give rise to the inference that the Bank was somehow acting in a racially discriminatory way in refusing to cash his check without a signature guarantee.

Moreover, the Bank's refusal to cash Mr. Bailey's check was in accordance with the Harleysville National Corporation Check Cashing Procedures eventually produced. (Bailey Exhibit 1, attached to Plaintiff's Motion for sanctions). Mr. Bailey's frustration that the section of the Bank's check cashing policy pertaining to non-customer checks of over $1,000 was not publicly posted is understandable. However, the Bank's failure to post every element of its policy does not change the substance of that policy; here, the Bank has consistently averred – in deposition, and in the verbal and written statement of Mr. Caldwell during the incident in

question – that it requires a signature guarantee to cash non-customer checks of over $1,000. In refusing to cash Mr. Bailey's check, the Bank followed the letter of its policy.

In alleging racial discrimination in the Bank's conduct toward him, but alleging no facts to support the allegation, Mr. Bailey does not satisfy the requirement of the second element of a prima facie claim under section 1981. A court will only reach and evaluate the third element of a §1981 claim if it finds that the second element has been satisfied. Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001). The Court therefore need not address the question, addressed at length in Defendants' motion, of whether the Bank's refusal to cash Mr. Bailey's check constitutes an impairment of any of Mr. Bailey's rights under section 1981.[3]

## VI.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted.

An appropriate Order follows.

---

[3] Mr. Bailey cannot bring a cognizable claim against the Bank under the "full and equal benefits" clause of section 1981 because only state actors may be sued under that clause, and, as established *supra,* the Bank is not a state actor. Id. at 799. Thus, if his claim is valid at all under section 1981, it must be under that section's "make and enforce contracts" clause. Id.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THEODORE BAILEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HARLEYSVILLE NATIONAL | : | NO. 04-1541 |
| BANK & TRUST. CO., | : | |
| J.R. CALDWELL and EMPLOYEES | : | |
| | : | |

**ORDER**

AND NOW, this   22nd   day of August, 2005, upon consideration of Defendant's Motion for Summary Judgment (Docket No. 22), and the responses thereto, it is hereby ORDERED that the Motion is GRANTED.  Plaintiff's Amended Complaint is DISMISSED and the Clerk shall close this case.

BY THE COURT:

s/Michael M. Baylson
_____
Michael M. Baylson, U.S.D.J.

O:\Kate\Bailey v. Harleysville Nat'l Bank\Bailey Summary Judgment.wpd